UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SILVINA MARGULIS, and her husband HUGO BLIFFELD,<br><br>            Plaintiffs,<br><br>      v.<br><br>STRYKER CORPORATION, *et al.*,<br><br>            Defendants. | Civil Action No. 19-10745 (SDW) (ESK)<br><br>**REPORT AND RECOMMENDATION** |

EDWARD S. KIEL, United States Magistrate Judge

This matter is before the Court for a report and recommendation pursuant to Local Civil Rule 72.1 on the motion by Defendants Stryker Corporation ("Stryker") and Howmedica Osteonics Corp. ("HOC") to dismiss the Complaint (the "Motion"). (ECF No. 23.) Plaintiffs opposed the Motion. (ECF No. 28, Plaintiffs' Brief ("Pl. Br.").) Defendants thereafter filed a reply. (ECF No. 31, Defendants' Reply Brief ("Defs. Reply Br.").) The Court did not hear oral argument on the Motion. *See* Fed.R.Civ.P. 78; L.Civ.R. 78.1. After reviewing the parties' submissions, I recommend the Motion be granted.

## BACKGROUND

This action was initially filed on December 19, 2018 in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Florida State Court"). (ECF No. 1-2 ("Compl.").) The Complaint asserts "a products liability action"

1

against Defendants relating to the "design, development, testing, assembly, manufacturing, packaging, labeling, marketing, distribution, supplying and selling" of a hip replacement system. (Compl. ¶ 1.) The system consists of the "(a) Accolade™ TMZF ® Plus Hip Stem *and* the (b) HOW/OST V40™ Alumina Femoral Head *and* the (c) Trident® PSL® HA Cluster Acetabular Shell *and* the (d) HOW/OST Trident® 10" Polyethylene Insert *and* the (e) Acetabular Dome Hole Plug *and* the (f) Torx® 6.5mm Canellous Bone Screws 25mm length" (collectively, the "Product"). (*Id.*)

## I. THE PARTIES

Stryker is incorporated and maintains its principal place of business in Michigan. (ECF No. 23-3, Declaration of David Furgason ("Furgason[1] Decl.") ¶ 3.) HOC is a New Jersey Corporation with its principal place of business in New Jersey. (*Id.* at ¶ 11.) HOC is a wholly-owned subsidiary of Stryker, and HOC licenses the Stryker brand name for use on its orthopedic devices. HOC pays Stryker a licensing fee. (*Id.* at ¶ 17.)

Plaintiffs Silvina Margulis ("Margulis") and Hugo Bliffeld ("Bliffeld") are citizens and residents of Argentina. (Compl. ¶ 7.) Margulis is Bliffeld's wife. (*Id.* at 1.)

## II. THE ALLEGED INJURIES

Margulis underwent a Total Hip Arthroplasty ("THA") of her right hip on October 8, 2008 in Buenos Aires, Argentina upon her doctor's recommendation. (*Id.* at ¶ 10.) THA is a surgical procedure wherein a patient's hip is replaced with artificial or synthetic

---

[1] David Furgason identifies himself as being the "VP, Tax for Stryker." (Furgason Decl. ¶ 2.)

components. (*Id.* at ¶ 5.) The THA performed on Margulis involved the "utiliz[ation of] the entire assemblage of" the Product. (*Id.* at ¶ 10.)

Plaintiffs allege that the United States Food and Drug Administration ("FDA") issued multiple "Adverse Event reports"[2] and recalls of certain Product components in 2007 and 2011, and that "Stryker"[3] issued its own non-FDA recalls for Product components in 2007 and 2012. (*Id.* at ¶ 12.) Plaintiffs also allege that "Stryker" was aware of certain Product defects "as early as February 2005" and April 2007. (*Id.*) According to Plaintiffs, the "Adverse Event reports" were not distributed in Argentina prior to Margulis's THA surgery. (*Id.* at ¶ 13.)

In 2016, Margulis started experiencing pain, loosening, deformity, an inability to walk, and dislocation of her right hip. (*Id.* at ¶ 14.) On August 31, 2016 and November 26, 2016, Margulis was admitted to the hospital in Argentina for hip dislocation and underwent "closed reductions of the hip." (*Id.*) Margulis continued to experience problems with her right hip. (*Id.*) Ultimately, in 2017, all components of the Product were removed and replaced in two separate surgeries. (*Id.* at ¶¶ 14–15.)

---

[2] The Court is taking judicial notice that the "Adverse Event report" referenced in the Complaint at paragraph 12 refers to a report issued by the FDA Adverse Event Reporting System, which "is a database that contains adverse event reports, medication error reports and product quality complaints resulting in adverse events that were submitted to FDA." https://www.fda.gov/drugs/surveillance/questions-and-answers-fdas-adverse-event-reporting-system-faers.

[3] In the Complaint, Plaintiffs do not distinguish between Stryker and HOC but, rather, treat them as one corporate entity, which they call "Stryker." (Compl. *passim*.)

Plaintiffs allege the "Stryker components . . . failed." (*Id.* at ¶ 14.) Margulis blames her injuries on defects in "Stryker's" Product and "Stryker's" failure to circulate recalls and concerns about the Product in Argentina. (*Id.* at ¶ 16.) Bliffeld asserts a *per quod* claim resulting from the injuries to his wife, Margulis.

### III.  REMOVAL TO FEDERAL COURT AND TRANSFER TO DISTRICT OF NEW JERSEY

Defendants removed the action, based on federal diversity jurisdiction, from the Florida State Court to the United States District Court for the Southern District of Florida (the "Florida Federal Court") on February 19, 2019. (ECF No. 1.) Following removal, Defendants moved to dismiss the Complaint arguing, in part, that they are not subject to general or specific jurisdiction in Florida. (ECF No. 6.)

Plaintiffs opposed the motion to dismiss and cross-moved to change venue to the District of New Jersey "to bypass a definitive decision on the jurisdictional questions." (ECF No. 13 at 1.) Plaintiffs argued that jurisdiction in New Jersey would "unquestionably lie" because it was HOC's "home jurisdiction." (*Id.*) The Florida Federal Court ordered the action transferred to this Court on April 23, 2019. (ECF No. 17.) The Florida Federal Court also denied Defendants' motion to dismiss without prejudice "to their refiling after transfer." (*Id.* at 2.)

Defendants promptly filed the currently pending Motion on July 17, 2019 following the transfer. (ECF No. 23.) Defendants argue that the Complaint should be dismissed because Stryker is not subject to general jurisdiction or specific jurisdiction in

4

New Jersey and move to dismiss the Complaint based upon the doctrine of *forum non conveniens* and under Federal Rule of Civil Procedure (the "Rule") 8(a)(2).[4]

## LEGAL ANALYSIS AND DISCUSSION

### I. STRYKER SHOULD BE DISMISSED BECAUSE THE COURT LACKS PERSONAL JURISDICTION

The burden to establish personal jurisdiction over a defendant lies with Plaintiffs. *See Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Once a defendant raises a jurisdictional objection, Plaintiffs must come forward with sufficient facts to establish that personal jurisdiction is proper. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Personal jurisdiction can be established by way of general or specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15, nn. 8 & 9 (1984).

General jurisdiction attaches only when a defendant's affiliations with a state in which the suit is brought "are so constant and pervasive as to render [it] essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (internal quotes omitted). In order to exercise specific jurisdiction, "the *suit* must arise out of or relat[e] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S.Ct. 1773, 1780 (2017) (internal quotes omitted).

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d

---

[4] Because I recommend the Complaint be dismissed for *forum non conveniens*, Defendants' argument under Rule 8(a)(2) will not be addressed herein.

5

254, 258–59 (3d Cir. 1998). First, the court applies the forum state's long-arm statute to determine whether it permits the exercise of personal jurisdiction. *Id.* at 259. Second, the court applies the principles of the Due Process Clause of the United States Constitution. *Id.* In New Jersey, this inquiry is collapsed into a single step, because New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the Constitution, *i.e.*, does not offend traditional notions of fair play and substantial justice. *See Wurth Adams Nut & Bolt Co. v. Seastrom Mfg. Co., Inc.*, No. 14-3804, 2015 WL 1530969, at *1 (D.N.J. Apr. 6, 2015).

### A.   There Is No General Jurisdiction Over Stryker

Here, there is no basis for general jurisdiction over Stryker in the District of New Jersey. Stryker is a Michigan corporation with its principal place of business located in Michigan. (Furgason Decl. ¶ 3.) Stryker does not run its business operations from New Jersey. (*Id.* at ¶ 5.) Plaintiffs, in response, have not come forward with any evidence to warrant a finding that Stryker's affiliation with New Jersey has been so continuous and systematic that Stryker is "at home in New Jersey." *Benitez v. JMC Recycling Sys., Ltd.*, 97 F.Supp.3d 576, 581 (D.N.J. 2015) (citing *Daimler AG*, 571 U.S. at 138–39).

Accordingly, I find that the District of New Jersey does not have general jurisdiction over Stryker.

### B.   There is No Specific Jurisdiction Over Stryker

To exercise specific jurisdiction over a party, there must be an "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers*, 137 S.Ct. at 1780. As previously stated

6

herein, the suit must arise out of or relate to the defendant's contacts with the forum. *See id.* "When there is no such connection, specific jurisdiction is lacking regardless of the extent of the defendant's unconnected activities in the State." *Id.* at 1781.

Establishing specific jurisdiction involves a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts with the forum; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007).

Here, although Plaintiffs seek to identify Stryker and HOC as "Stryker," they are separate legal entities. Stryker and HOC set forth the following undisputed facts:

    1.    Stryker and HOC are not "alter egos" and Stryker does not control the operations of HOC. (Furgason Decl. ¶ 13; ECF No. 6-2, Scott Medrick Declaration ("Medrick Decl.") ¶ 8.)

    2.    Stryker and HOC maintain separate balance sheets, separate property and separate employees, including research and development teams. (Furgason Decl. ¶ 14.)

    3.    All of HOC's design, development, testing, manufacturing, marketing, distribution and sales activities are performed and controlled by HOC employees. (*Id.* at ¶ 16.)

    4.    HOC licenses the Stryker brand name for use on its orthopedic devices and pays Stryker a licensing fee. (*Id.* at ¶ 17.)

    5.    Stryker does not design, manufacture, develop, test, distribute, market or sell orthopedic products, and did not design, manufacture, develop, test, distribute, market or sell the Product. (*Id.* at ¶¶ 9–10.)

    6.    Stryker does not own the intellectual property rights for the Product. (*Id.*)

Based on these unchallenged facts, I find that this Court lacks specific personal jurisdiction over Stryker because Stryker has not directed its activities to New Jersey and the litigation is unrelated to any contact of Stryker with New Jersey.[5]

## II.     ARGENTINA IS THE MORE CONVENIENT FORUM

Defendants seek dismissal of the Complaint under the doctrine of *forum non conveniens*.  They argue that Argentina is a "far more convenient and appropriate forum for the adjudication of this matter than New Jersey."  (ECF No. 23-1, Defendants' Brief ("Defs. Br.") at 8.)  I agree.

*Forum non conveniens* permits a court, in the exercise of its sound discretion, to dismiss a case, even if the court were to possess jurisdiction, when an alternative forum has jurisdiction to hear the case, and trial in a plaintiff's chosen forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, . . . or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."  *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947); *see also Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).  "[T]he district court is accorded substantial flexibility in evaluating a *forum non conveniens* motion, and [e]ach case turns on its facts."  *Van Cauwenberghe v. Biard*, 486 U.S. 517, 519 (1988) (internal cites and quotes omitted).

---

[5] Plaintiffs, moreover, all but concede Stryker should be dismissed.  Plaintiffs "would agree to the filing of an amended complaint proceeding against [HOC] only."  (Pl. Br. at 11.)

8

A district court's resolution of a *forum non conveniens* motion should follow a three-step analysis. First, the court must determine whether an adequate alternative forum can entertain the case. If such a forum exists, the court must determine the appropriate level of deference due to the plaintiff's choice of forum. Once the amount of deference is determined, the court must balance the relevant private and public interest factors. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189–90 (3d Cir. 2008).

### A. Argentina Is An Available And Adequate Forum

To satisfy the adequacy requirement, (1) the defendant must be amenable to process in the alternative forum, and (2) the subject matter of the lawsuit must be cognizable in the alternative forum where the plaintiff can be afforded appropriate redress. *Piper Aircraft Co.*, 454 U.S. at 252; *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir. 1988); *Kultur Int'l Films, Ltd. v. Covent Garden Pioneer, FSP., Ltd.*, 860 F.Supp. 1055, 1063 (D.N.J. 1994).

Defendants submitted the Declaration of Facundo Viel Temperley, an Argentinian lawyer, in support of their argument that Argentina is an available and adequate forum for the resolution of this case. (ECF No. 23-4, Declaration of Facundo Viel Temperley ("Temperley Decl.").) Plaintiffs do not dispute that Argentina is an available and adequate forum, and do not offer any rebuttal to Mr. Temperley's understanding of the Argentine legal system.[6]

---

[6] Plaintiffs address this issue in only one sentence of their opposition papers. Plaintiffs allege that "according to [Mr. Temperley], discovery of the sort readily available under the Federal Rules of Civil Procedure will not be available under Argentine law, further impairing the ability of all parties to prepare for trial." (Pl. Br. at 10.) However, Mr. Temperley does not

There is no dispute that HOC is amenable to process in Argentina. Argentine courts have jurisdiction over cases brought by Argentine citizens against foreign defendants for damages incurred in Argentina. (Temperley Decl. ¶¶ 8, 11.) Argentine law permits tort liability claims based on negligence, strict liability, breach of warranty, fraud and/or negligence *per se*. (*Id.* at ¶ 11.) The cause of action in Plaintiffs' Complaint based upon strict liability for product defects can be brought in Argentina pursuant to Article 1757 of the Civil and Commercial Code, and Article 40 of the Consumer Protection Law. (*Id.* at ¶ 12.) Dismissal by a court in the United States based on *forum non conveniens* would not impact the jurisdiction of Argentine courts to hear this case, because under the Argentine Constitution and the law of procedure, an Argentine court could not decline jurisdiction in a case where it has subject matter jurisdiction. (*Id.* at ¶ 10.) Further, Plaintiffs, if they prove liability, can recover damages in Argentina. (*Id.* at ¶ 13.) In the Argentine legal system, the goal of civil liability is to provide for a full compensation, that is, to restore things to their status before the damage occurred. (*Id.*)

I find that Defendants have satisfied their burden of demonstrating that Argentina is an available and adequate forum.

### B. Plaintiffs' Choice Of Forum Is Given Little Deference

Ordinarily, there is a "strong presumption of convenience . . . in favor of a *domestic* plaintiff's chosen forum . . ." *Windt*, 529 F.3d at 190 (emphasis added) (citing

---

make this statement in his declaration. Rather, he concludes that discovery will be produced in a more expeditious manner if the case were before an Argentine court. (Temperley Decl. ¶ 16.)

*Piper Aircraft Co.*, 454 U.S. at 255).  When the plaintiff is *foreign*, this assumption is much less reasonable.  This is because the main purpose of a *forum non conveniens* inquiry is to ensure the trial is convenient.  *Id.*

Here, however, little deference should be given to Plaintiffs' choice to proceed with this case in New Jersey instead of Argentina.  New Jersey is *not* Plaintiffs' chosen forum.  Rather, Plaintiffs began this action, originally, before the Florida State Court.  Only after the case was removed to the Florida Federal Court, and upon the filing of a motion to dismiss for lack of personal jurisdiction, did Plaintiffs seek to transfer the case to New Jersey.  Indeed, Plaintiffs were unable to cite to any evidence to support the exercise of personal jurisdiction over either defendant by the Florida Federal Court in opposition to the motion to dismiss filed therein.  Rather, Plaintiffs argued that "questions of fact" were presented and discovery "may reveal a more complex chain of distribution." (ECF No. 7 at 5.)[7]

Plaintiffs' "choice" to come to New Jersey was not to ensure the trial would be convenient for them, but to avoid the dismissal of their Complaint in Florida for lack of personal jurisdiction.  Under these circumstances, Plaintiffs' decision to proceed in New Jersey was not a "choice" borne out of convenience.  Indeed, Plaintiffs' choice of forum also receives less deference if it appears motivated by forum shopping.  *See Interface*

---

[7] As with the present Motion, Defendants presented evidence that the Product was manufactured in Cork, Ireland and shipped directly to Argentina.  (ECF No. 6-2, ¶ 10.)

*Partners Int'l Ltd. v. Hananel*, 575 F.3d 97, 102 n.9 (1st Cir. 2009). Indicia of forum shopping are apparent in the procedural history of this matter.

Accordingly, little to no deference is afforded Plaintiffs' "chosen" forum.

### C. Private And Public Interest Factors Overwhelmingly Weigh In Favor Of Argentina As The More Convenient Forum

#### 1. Private interest factors favor resolution in Argentina

The United States Supreme Court has prescribed a balancing of private interest factors affecting the convenience of the parties. They include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947).

Here, Plaintiffs are residents and citizens of Argentina. (Compl. ¶ 7.) The Product that allegedly caused Plaintiffs to suffer damages was manufactured in Cork, Ireland and shipped directly to Argentina. (ECF No. 6-2, ¶ 10.) The surgery relating to the Product was performed in Argentina and all treatment for Margulis's personal injuries were in Argentina. (*See generally* Compl.) The relevant medical records are in Argentina and, presumably, in Spanish.[8]

---

[8] Given Margulis's lengthy medical history and numerous procedures, it appears undisputed that documents relating to same will be voluminous. *See Imamura v. Gen. Elec. Co.*, 371 F.Supp.3d 1, 12 (D. Mass. 2019) (citing *Blanco v. Banco Indus. De Venez., S.A.*, 997 F.2d 974, 982 (2d Cir. 1993)) (holding that the significant cost to the parties and delay to the court of

12

On the other hand, Plaintiffs argue that documents relating to the design, testing, modifications, recalls, sales, and distribution will likely be stored at HOC's offices in New Jersey "or at least readily accessible to [HOC] in paper or electronic form." (Pl. Br. at 5.)[9] The location of paper or electronic documents relating to the Product, however, is not a significant factor. *See Moog, Inc. v. Newport Aeronautical, Inc.*, No. 14-504, 2016 WL 3444238, at *5 (W.D.N.Y. June 23, 2016) (noting that facsimiles and e-mail technology can render the location of documents a neutral factor in a *forum non conveniens* analysis); *see also Benedict v. Abbott Labs, Inc.*, 118 N.E.3d 518, 528 (Ill. App. Ct. 2018) ("[T]he location of documents, records and photographs has become a less significant factor in *forum non conveniens* analysis in the modern age of e-mail, Internet, telefax, copying machines and world-wide delivery services, since they can now be easily copied and sent.").

Importantly, Mr. Temperley details significant difficulties the parties will face in obtaining information from Argentina if the case were to remain in New Jersey. Discovery of Argentinian witnesses and documents will largely be unavailable, as Argentina will not execute the corresponding Letters of Request. (Temperley Decl. ¶15 (citing Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, 1970 T.I.A.S. No. 7444, codified at 28 U.S.C. §

---

having to translate all the relevant documents and testimony militate strongly in favor of dismissal based upon *forum non conveniens*).

[9] Defendants concede that "design documents related to the [P]roduct . . . may be housed in New Jersey." (Defs. Br. at 3–4.)

13

1781, Art 23).) Mr. Temperley explains that while Argentina is a party to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, it did so subject to an "Article 23 reservation." The reservation provides, "The Argentine Republic will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in the common law countries." (*Id.*)  If the matter were litigated in the United States, the process of obtaining testimony of witnesses and documents would take "two or three years" through the letters rogatory process. (Temperley Decl. ¶ 16.)  The process to obtain evidence would be much more expeditious if the matter were litigated before an Argentine court. (*Id.*)

The private interest factors weigh strongly in favor of dismissal.

### 2. Public interest factors favor resolution in Argentina

Public interest factors to consider include: "[(1)] administrative difficulties flowing from court congestion; [(2)] the local interest in having localized controversies decided at home; [(3)] the interest in having the trial of a diversity case in a forum that is at home with the state law that must govern the case; [(4)] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and [(5)] the unfairness of burdening citizens in an unrelated forum with jury duty." *Windt*, 529 F.3d at 189 (internal quotes omitted).

First, there is no allegation that there are any administrative difficulties flowing from court congestion in Argentina. Thus, this factor does not weigh against resolving the case in Argentina.

Second, Plaintiffs argue that New Jersey has "an interest in monitoring and regulating the conduct of a New Jersey based corporation such as" HOC. (Pl. Br. at 10.) Plaintiffs, moreover, cite to a multicounty litigation in the Superior Court of New Jersey relating to injuries arising from the use of the Product. (*Id.* at 9.) Defendants, on the other hand, argue that Argentina has a stronger interest in this case, which involves a medical device that was "implanted in Argentina, by an Argentine surgeon into an Argentinian resident whose medical treatment has taken place in Argentina." (Defs. Reply Br. at 7–8.) Both Plaintiffs and Defendants raise important local interests in New Jersey and Argentina. Thus, this factor does not weigh in favor of or against resolving this case in Argentina.

Third, it appears Argentine law should apply to this case. In diversity actions, district courts must apply the choice of law rules applicable in the state in which it sits. *Woessner v. Air Liquide, Inc.*, 242 F.3d 469, 472 (3d Cir. 2001). In tort cases, New Jersey applies the "most significant relationship" test of the Restatement (Second) of Conflict of Laws as well as the Restatement's default rule that the location of the injury in tort cases determines the law to be applied unless some other location has a more significant relationship. *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008). Here, the Product was implanted in Argentina and Plaintiffs suffered their alleged damages in Argentina. Therefore, Argentine law will likely apply. The application of Argentine law to this case weighs in favor of resolving this matter in Argentina.

Thus, in weighing the private and public interest factors, I find that the factors strongly favor dismissal on *forum non conveniens* grounds.

15

## **CONCLUSION**

I recommend that Stryker be dismissed because this Court lacks personal jurisdiction over Stryker. Plaintiffs appear to agree. I further recommend that the Complaint be dismissed for *forum non conveniens*. The Argentine courts provide an available and adequate forum for resolution. The private and public interest factors weigh strongly in favor of dismissal. New Jersey, moreover, was not Plaintiffs' choice of forum and Plaintiffs' procedural maneuvering appears to have been an attempt at forum shopping to avoid dismissal before the Florida Federal Court. Thus, Plaintiffs' "choice" of New Jersey is given little deference.

Accordingly, I recommend that the motion to dismiss be granted and that the Complaint be dismissed. Furthermore, I recommend that Plaintiffs be granted leave to bring this action in the courts of Argentina within 60 days of the entry of any potential order adopting this Report and Recommendation.

/s/ Edward S. Kiel
HON. EDWARD S. KIEL
United States Magistrate Judge

Dated: November 12, 2019